**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIN PFEFFERKORN, LOTTIE FARVER, AND AMY PARKS, | ) ) ) | CASE NO. 17-cv-1223 |
| On behalf of themselves and all others similarly situated, | ) ) ) | JUDGE: |
| Plaintiffs, | ) ) ) ) ) ) | **JURY DEMAND** |
| v. | ) ) ) | |
| PRIMESOURCE HEALTH GROUP, LLC; PRIMESOURCE HEALTH CARE SYSTEMS, INC.; PRIMESOURCE HEALTH CARE SYSTEMS, INC.; PRIMESOURCE OF MICHIGAN, LLC; SENIORSURE HEALTH PLANS, INC.; PRIMEHEALTH GROUP LLC, d/b/a SeniorWell; ADVANTAGE CAPITAL HOLDINGS, LLC; DAVID FLEMING; BOBBIE RICHIE; TRACI BERNTHAL; ANNIE ELLIOTT; KENNETH KING, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' COMPLAINT FOR VIOLATIONS**
**OF THE FAIR LABOR STANDARDS ACT**

Plaintiffs Erin Pfefferkorn, Lottie Farver, and Amy Parks (collectively "Plaintiffs"), by

their attorneys Arnstein & Lehr LLP and the Spitz Law Firm, LLC, bring this action on behalf of

themselves and all those similarly situated against Defendants PrimeSource Group, LLC,

PrimeSource Health Care Systems, Inc. (an Illinois Corporation), PrimeSource Health Care

Systems, Inc. (an Indiana Corporation), PrimeSource of Michigan, LLC, SeniorSure Health Plans,

Inc., PrimeHealth Group, LLC, Advantage Capital Holdings, LLC, David Fleming, Bobbie Richie,

Traci Bernthal, and Annie Elliott, seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Plaintiffs' FLSA claims are asserted as a collective action pursuant to 29 U.S.C. § 216(b). The following allegations are based upon information and belief, or personal knowledge as to Plaintiffs' own conduct and the conduct and acts of others.

## **PARTIES**

1. Erin Pfefferkorn ("Pfefferkorn") is an adult individual residing at 814 S. Indiana Avenue, city of Auburn, county of DeKalb, state of Indiana. Pfefferkorn has consented in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b), and her consent to sue form will be supplemented to this Complaint within 30 days of this filing.

2. Lottie Farver ("Farver") is an adult individual residing at 1057 Swinney Avenue, city of Fort Wayne, county of Allen, State of Indiana. Farver has consented in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b), and her consent to sue form will be supplemented to this Complaint within 30 days of this filing.

3. Amy Parks ("Parks") is an adult individual residing at 8331 N. County Road, 450 W, city of Milton, county of Wayne, state of Indiana. Parks has consented in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b), and her consent to sue form will be supplemented to this Complaint within 30 days of this filing.

4. PrimeSource Health Group, LLC, ("PrimeSource") is a Delaware Corporation lawfully licensed to do business in Illinois, and whose corporate headquarters is located at 2100 E Lake Cook Road, Ste. 1000, Buffalo Grove, Illinois, 60089

5. PrimeSource Health Care Systems, Inc., ("PrimeSource Illinois") is an Illinois corporation, whose corporate headquarters is located at 2100 E Lake Cook Road, Ste. 1000 Buffalo Grove, Illinois, 60089.

6. PrimeSource Health Care Systems, Inc., ("PrimeSource Indiana") is an Indiana corporation whose corporate headquarters is located at 2100 E Lake Cook Road, Ste. 1000 Buffalo Grove, Illinois, 60089.

7. PrimeSource of Michigan, LLC ("PrimeSource Michigan") is a Delaware corporation whose corporate headquarters is located at 2100 E Lake Cook Road, Ste. 1000 Buffalo Grove, Illinois, 60089.

8. PrimeSource is the owner and parent corporation of PrimeSource Illinois, PrimeSource Indiana, and PrimeSource Michigan.

9. PrimeSource, PrimeSource Illinois, PrimeSource Indiana, and PrimeSource Michigan are hereinafter referred to collectively as the "PrimeSource Defendants."

10. SeniorSure Health Plans, Inc., ("SeniorSure") is an Oklahoma for-profit corporation lawfully licensed to conduct business in the state of Illinois, which sells and underwrites insurance policies in the states of Illinois, Indiana, Michigan, Ohio, and Kentucky, exclusively for customers of the PrimeSource Defendants.

11. The PrimeSource Defendants and SeniorSure Health Plans, Inc., have a common business purpose, a unified operation, and common ownership, and form a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and form a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

12. During all times material to this Complaint, the PrimeSource Defendants and SeniorSure Health Plans, Inc. were Plaintiffs' and members of the opt-in classes' "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and O.R.C. § 4111.03(D).

13. At all times referenced herein, Fleming was the owner, president, and CEO of SeniorSure and of each of the PrimeSource Defendants.

14. During all times material to this Complaint, Fleming supervised and/or controlled Plaintiffs and the putative class' employment with the PrimeSource Defendants, and acted directly or indirectly in the interest of the PrimeSource Defendants in relation to their employees, and was an employer within the meaning of section 3(d) of the FLSA. See *Mitchell v. Chapman*, 343 F.3d 811, 827-28 (6th Cir.2003).

15. At all times referenced herein, Richie was the Senior Vice President of Clinical Services for the PrimeSource Defendants.

16. During all times material to this Complaint, Richie supervised and/or controlled Plaintiffs and the putative class' employment with the PrimeSource Defendants, and acted directly or indirectly in the interest of the PrimeSource Defendants in relation to their employees, and was an employer within the meaning of section 3(d) of the FLSA. See *Mitchell v. Chapman*, 343 F.3d 811, 827-28 (6th Cir.2003).

17. At all times referenced herein, Bernthal was the Senior Vice President of Finance for the PrimeSource Defendants.

18. During all times material to this Complaint, Bernthal supervised and/or controlled Plaintiffs and the putative class' employment with the PrimeSource Defendants, and acted directly or indirectly in the interest of the PrimeSource Defendants in relation to their employees, and was an employer within the meaning of section 3(d) of the FLSA.

19. Elliott is and was a risk control officer for Advantage, who held herself out as the Vice President of PrimeHealth, whom controlled the operations and labor and compensation policies of PrimeSource from approximately August, 2016, through December, 31, 2016

20. From approximately August of 2016 to December 31, 2016, Elliott supervised and/or controlled Plaintiffs and the putative class' employment with the PrimeSource Defendants, and

acted directly or indirectly in the interest of the PrimeSource Defendants in relation to their employees, and was an employer within the meaning of section 3(d) of the FLSA

21. King is and was the President of Advantage, whom controlled the operations and labor and compensation policies of PrimeSource through PrimeHealth and Elliott from approximately August, 2016, through December, 31, 2016.

22. From approximately July of 2016 to December 31, 2016, Elliott supervised and/or controlled Plaintiffs and the putative class' employment with the PrimeSource Defendants, and acted directly or indirectly in the interest of the PrimeSource Defendants in relation to their employees, and was an employer within the meaning of section 3(d) of the FLSA. See *Mitchell v. Chapman*, 343 F.3d 811, 827-28 (6th Cir.2003).

23. PrimeHealth Group, LLC, ("PrimeHealth") is an Illinois limited liability company lawfully licensed to conduct business in the state of Illinois, which maintains offices at 2100 E Lake Cook Road, Ste. 1000 Buffalo Grove, Illinois, 60089.

24. PrimeHealth was formed on July 12, 2016, and is a mere continuation of PrimeSource under a new operating name. PrimeHealth does business as "SeniorWell."

25. PrimeHealth is the parent corporation of the following corporations: PrimeHealth of Illinois, Inc; PrimeHealth of Indiana, Inc; PrimeHealth of Ohio, Inc; PrimeHealth of Michigan, Inc; and PrimeHealth of Kentucky, Inc.

26. Advantage Capital Holding, LLC, ("Advantage") is a Delaware Corporation lawfully licensed to conduct business in Illinois, and is the parent company and/or owner of PrimeHealth.

27. Advantage Capital Holdings, LLC wholly owns PrimeHealth, and solely controls and directs its operations.

28. PrimeHealth and Advantage are referred to collectively herein as the "Advantage Defendants."

29. The Advantage Defendants are successors to the PrimeSource Defendants for the purposes of liability under the FLSA.

30. The putative FLSA Class, pursuant to 29 U.S.C. § 216(b), is defined in paragraph 95 of the Complaint.

## JURISDICTION AND VENUE

31. This Court has federal question jurisdiction over this action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

32. This Court has personal jurisdiction over the PrimeSource Defendants, SeniorSure, and the Advantage Defendants because they are corporations that are registered to conduct business in this District, and at all times material to the allegations contained herein, each conducted substantial business in this District and had sufficient minimum contacts within this District.

33. This Court has personal jurisdiction over Fleming, Richie, Bernthal, Elliott, and King, because at all times referenced in the Complaint, they maintained control, oversight, and direction over the operation of The PrimeSource Defendants, the Advantage Defendants, and SeniorSure's facilities and operations, including their employment practices.

34. Venue is proper in this forum pursuant to 28 U.S.C. § 1391, because at all times relevant hereto, Defendants are and always have been responsible for the acts alleged herein, a substantial portion of the practices complained of herein occurred in this District, and Defendants have received substantial compensation as a result of doing business in this District. Moreover, at all times material to the allegations contained herein, Defendants were registered to conduct business in the State of Illinois and/or conducted substantial business in the State of Illinois.

## FACTS
## The PrimeSource Defendants' Wage and Hour Practices.

35. Prior to their closure, the PrimeSource Defendants held themselves out as "the leader in mobile healthcare innovation, serving seniors in long-term nursing facilities."

36. SeniorSure is a captive insurance company, providing policies of insurance exclusively to patients residing in long-term care facilities "which are contracted with PrimeSource HealthCare Systems and their network of providers."

37. SeniorSure is and was so interrelated with the PrimeSource Defendants that it constituted a joint-employer of Plaintiffs and those similarly situated with the PrimeSource Defendants.

38. The PrimeSource Defendants' business model consisted of entering into contracts with physicians and participating nursing homes Illinois, Indiana, Michigan, Kentucky, and Ohio for the purposes of furnishing optometrist, audiologist, dentist, and podiatrist to the patients of these facilities.

39. The PrimeSource Defendants' services were primarily paid for through Medicare, Medicaid, and SeniorSure insurance policies.

40. While on-site at nursing facilities, physicians contracted with PrimeSource would be assisted by a support staff consisting of "Clinical Assistants" and "Patient Assistants" (Collectively, "Support Staff").

41. As part of their job duties, Physicians and Support Staff would travel to different long-term care facilities throughout Illinois, Indiana, Michigan, and Kentucky during the work-week, and would regularly travel to more than one facility during the day.

42. Plaintiffs and those similarly situated were employed by PrimeSource as Clinical Assistants and/or Patient Assistants at times during the three years immediately preceding the filing of this action.

43. Plaintiffs' primary job duties consisted of maintaining, inspecting, repairing, delivering, and cleaning medical equipment, and travelling to long-term care facilities throughout Illinois, Indiana, Michigan, and Kentucky for the purposes of providing assistance to physicians and patients.

44. Plaintiffs were required by the PrimeSource Defendants to perform several primary job duties while they were travelling, and while at home, both before and after Plaintiffs would report to nursing facilities.

45. Plaintiffs and those similarly-situated were non-exempt employees, and subject to the minimum wage and overtime requirements of the FLSA.

46. During all times material to this Complaint, Plaintiffs and those similarly situated were misclassified by the PrimeSource Defendants as exempt from the FLSA, and paid a flat salary.

47. Plaintiffs and those similarly-situated occasionally received merit-based bonuses for their work, and for work performed on Saturdays.

48. During all times material to this Complaint, Plaintiffs and those similarly situated were subjected to the following unlawful practices:

   a. Plaintiffs and those similarly situated were regularly required to meet at a location predetermined by PrimeSource for the purposes of carpooling to long-term care facilities throughout Illinois, Indiana, Michigan, and Kentucky. Patient Assistants would be picked up by Clinical Assistants operating PrimeSource owned vehicles, and then driven to long-term care facilities that were one hundred miles or more away from the meeting location. This travel often took two to three hours each way, but Plaintiffs and those similarly situated were not compensated for their travel time between the meeting spot and the long-term care facilities. Moreover, Plaintiffs and those similarly situated were required by the PrimeSource Defendants to perform principal job duties while travelling, to include discussing work assignments and work division, the care needs of particular patients, and participating in conference calls with PrimeSource's home office in Buffalo Grove, Illinois.

   b. Plaintiffs and those similarly situated were paid on salary basis and were paid the same fixed rate on a biweekly basis regardless of how many hours they actually worked. As a result, Plaintiffs and those similarly situated were not paid for all hours worked or overtime for any hours worked in excess of 40 hours in a given week.

c. PrimeSource had a practice of shipping medical equipment to the homes of Clinical Assistants for the purposes of inspection, assembly, cleaning, and repair. Clinical Assistants were not compensated for this work. On other occasions, Clinical Assistants were required to travel to UPS and FedEx locations, or to other Clinical Assistant's homes, to pick medical equipment up, and to drop equipment off at nursing facilities, to include those which they were not assigned to work for the day.

d. Clinical Assistants were required to have maintenance on their PrimeSource owned vehicles performed, and were not compensated for the time they spent engaging in these activities.

e. Plaintiffs and those similarly situated performed a substantial amount of work at home on behalf of the PrimeSource Defendants, and which was required by the PrimeSource Defendants, for which they were not compensated.

**The Advantage Defendants Are Successors To The PrimeSource Defendants.**

49. On or around May 27, 2016, several former Ohio Clinical Assistants and Patient Assistants who were previously employed by the PrimeSource Defendants and SeniorSure filed a collective action under the FLSA and under the state of Ohio's Wage Laws in the Northern District Court of Ohio, alleging that PrimeSource had misclassified them, failed to pay them for all hours worked, and had failed to pay them overtime, in the case of *Henrietta Wilson v. PrimeSource Health Care of Ohio, Inc., et al*, Case No. 1:16cv01298.

50. On or around July 12, 2016, PrimeHealth was organized and incorporated by Advantage for the purposes of taking over and continuing the PrimeSource Defendants' business operations.

51. In or around October of 2016, PrimeSource sold nearly all of its assets to the Advantage Defendants through an asset purchase to PrimeHealth.

52. Upon information and belief, The Advantage Defendants also purchased SeniorSure through a separate agreement, in which another company wholly-owned by Advantage, Ability Insurance Company, acquired the assets of SeniorSure ("SeniorSure Agreement").

53. The SeniorSure Agreement has not been finalized as of the filing of this Lawsuit, and is currently pending before the Oklahoma Insurance Department.

54. At the time the Advantage Defendants purchased the PrimeSource Defendants' assets, they were aware of the *Wilson* litigation, and the PrimeSource Defendants' identical illegal pay practices in Illinois, Indiana, Michigan, and Kentucky.

55. Prior to the asset sale, the PrimeSource Defendants and SeniorSure would have been able to provide the relief sought by Plaintiffs and those similarly situated.

56. As a result of the asset sale, the PrimeSource Defendants and SeniorSure are unable to provide relief to the Plaintiffs or those similarly situated.

57. The Advantage Defendants can provide Plaintiffs and those similarly-situated the relief sought in this Lawsuit.

58. Upon information and belief, shortly after the Advantage Defendants completed their purchase of the PrimeSource Defendants, PrimeHealth of Indiana sent a letter ("Transition Letter") to all of the nursing homes served by the PrimeSource Defendants in which it explained:

> PrimeHealth of Indiana LLC d/b/a SeniorWell has purchased certain assets of PrimeSource and is poised **to continue** to provide your facility with the services you have become accustomed to. **SeniorWell will utilize a team of geriatric physicians and clinicians that you are familiar with**, while providing excellent service and care to your residents and facility staff.
>
> **Continuity of care is the pinnacle of this transition** – you will find **all of your contacts are retained** and the Customer Care line is still your best source if you need to reach SeniorWell.[1]

59. A true and accurate copy of the Transition Letter is attached hereto as Exhibit A.

60. Upon information and belief, various affiliates and subsidiaries of Primehealth sent similar letters to the Transition Letter to nursing facilities in Ohio, Michigan, Kentucky, and Illinois.

61. Upon information and belief, an Advantage employee named Annie Elliott began overseeing and supervising PrimeSource's operations shortly after the asset sale was completed.

62. Annie Elliot is not an employee of PrimeHealth.

63. In reality, Annie Elliot is an employee of Advantage.

---

[1] **Emphasis** added.

64. The Advantage Defendants continued PrimeSource's unlawful pay practices from approximately August of 2016 through December 31, 2016.

65. On or around October 31, 2016, the PrimeSource Defendants sent a WARN notice to employees of PrimeSource of Indiana, PrimeSource of Ohio, and PrimeSource of Michigan, in which PrimeSource indicated that they would all be laid off on or by December 31, 2016 ("WARN Notice").

66. A true and accurate copy of the WARN Notice is attached hereto as Exhibit B.

67. In or around late December, 2016, The Advantage Defendants sent an unsolicited offer letters to a majority of PrimeSource's employees, in which Advantage offered to re-hire laid-off PrimeSource employees with a start date of January 2, 2017 ("Offer Letters").

68. The Offer Letters were signed by Annie Elliot, who identified herself as the Vice President of PrimeHealth of Indiana, LLC.

69. Farver received an Offer Letter from the Advantage Defendants on or around December 29, 2016.

70. A true and accurate copy of the Offer Letter Farver received is attached hereto as Exhibit C.

71. PrimeHealth hired a substantial number of PrimeSource's employees, who were only laid off from PrimeSource during the three-day Holiday weekend of December 31, 2016 through January 2, 2017.

72. There is a continuity of operations between the PrimeSource Defendants, SeniorSure, and The Advantage Defendants, such that the Advantage Defendants are successors in liability to PrimeSource to the Plaintiffs and those similarly-situated.

73. Subsequent to January 2, 2017, the Advantage Defendants stopped paying their Clinical Assistants and Patient Assistants a salary, and began paying them hourly.

**(Plaintiff Erin Pfefferkorn)**

74. PrimeSource employed Pfefferkorn as a Clinical Assistant from approximately January 4, 2010 through approximately December 30, 2016.

75. Pfefferkorn was not exempt from the requirements of the FLSA.

76. Pfefferkorn was compensated on a fixed salary regardless of how many hours she worked.

77. During all times relevant to this Complaint, Pfefferkorn regularly worked in excess of (40) hours per workweek.

78. Pfefferkorn was not compensated for any hours she worked in excess of (40) in a given week.

79. Pfefferkorn never received one and one-half times her regular rate of pay for any hours worked over (40) in a workweek the entire time she was employed by PrimeSource.

80. At times, Defendants' failure to pay Pfefferkorn for all hours worked resulted in her regular rate of pay falling below the applicable minimum wage, as established by the FLSA.

**(Plaintiff Lottie Farver)**

81. PrimeSource employed Farver as a Clinical Assistant from approximately August 16, 2008 through approximately December 30, 2016.

82. At some point during her employment, Farver became a "Clinical Assistant Field Supervisor."

83. Despite being titled as a "supervisor," Farver lacked the ability to hire or fire, nor did she have input of any significance regarding hiring and firing decisions.

84. Farver was non-exempt under the FLSA, as she never qualified for the Executive Exemption thereto.

85. Farver was compensated on a fixed salary regardless of how many hours she worked.

86. During all times relevant to this Complaint, Farver regularly worked in excess of (40) hours per workweek.

87. Farver was not compensated for any hours she worked in excess of (40) in a given week.

88. Farver never received one and one-half times her regular rate of pay for any hours worked over (40) in a workweek the entire time she was employed by PrimeSource.

**(Plaintiff Amy Parks)**

89. PrimeSource employed Parks as a Clinical Assistant from approximately February 6, 2012 through approximately December 30, 2016.

90. Parks was not exempt from the requirements of the FLSA.

91. Parks was compensated on a fixed salary regardless of how many hours she worked.

92. During all times relevant to this Complaint, Parks regularly worked in excess of (40) hours per workweek.

93. Parks was not compensated for any hours she worked in excess of (40) in a given week.

94. Parks never received one and one-half times her regular rate of pay for any hours worked over (40) in a workweek the entire time she was employed by PrimeSource.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

95. Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

96. Plaintiffs bring this as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all similarly situated individuals who are part of the following class:

> All individuals employed by PrimeSource Health Group, LLC, PrimeSource Health Care Systems Inc., an Indiana Corporation, PrimeSource Health Care Systems Inc., an Illinois Corporation, and/or PrimeSource of Michigan, as Clinical Assistants or Patient Assistants and who were not paid for all hours worked, and/or overtime compensation at a rate of one and one half times their respective regular rates of pay for hours worked over forty (40) in a workweek at any time during three (3) years preceding the filing of this action

These individuals are referred to as the "FLSA Class" or "FLSA Class Members."

97. Collective Action treatment of Plaintiffs' FLSA claims is appropriate because Plaintiffs and the FLSA Class have been subjected to the common business practices referenced in paragraph

48 (a)-(e), *supra*, and the success of their claims depends on the resolution of common issues of law and fact, including, *inter alia*, whether PrimeSource's companywide practices fail to properly compensate the FLSA Class Members for all hours worked.

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT

98. Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

99. During all times material to this Complaint, Plaintiffs and the FLSA Class Members were not exempt from receiving minimum wage under the FLSA because, *inter alia*, they were not "executive," "computer," "administrative," or "professional" employees, as those terms are defined under the FLSA. See 29 C.F.R. §§ 541.0, et seq.

100. During all times material to this Complaint, Plaintiffs and the FLSA Class Members were not subject to what is commonly known as the "Motor Carrier Act Exemption" because, inter alia, the vehicles they operated (2012-2016 Ford Escapes) had a Gross Vehicle Weight of 10,000 lbs. or less. See 29 U.S. Code § 213(b)(1).

101. During all times material to this Complaint, Plaintiffs and the FLSA Class Members were not exempt from receiving FLSA overtime benefits under the commonly-called "companionship exemption" because, inter alia, they did not work in a "private home," as contemplated by the FLSA. *See* 29 U.S.C. § 213(b)(15) and 29 C.F.R. § 552.1, et seq.

102. During all times material to this Complaint, Defendants failed to pay Plaintiffs and those similarly situated the proper minimum wage rate or for all hours worked as prescribed by 29 U.S.C. § 206.

103. During all times material to this Complaint, Defendants violated the FLSA with respect to the Plaintiffs and the FLSA Class Members by, *inter alia*, failing to compensate them at time-

and-one-half their regular rates of pay for any hours worked in excess of forty (40) hours per workweek.

104.   During all times material to this complaint, Defendants knew that Plaintiffs and the FLSA Class Members are not exempt from the minimum wage and overtime obligations imposed by the FLSA. Defendants also knew that they were required to pay Plaintiffs and the FLSA Class Members at least the applicable minimum wage, plus overtime compensation at a rate of one and one-half their respective regular rates for hours worked in excess of forty (40) hours per workweek. Despite such knowledge, Defendants willfully withheld and failed to pay the minimum wage and overtime compensation to which Plaintiffs and the FLSA Class Members are entitled.

105.   In violating the FLSA, Defendants acted willfully, without a good faith basis and in reckless disregard of clearly applicable FLSA provisions.

106.   As a direct and proximate cause of Defendants' conduct, pursuant to 29 U.S.C. § 216(b), Defendants are liable to Plaintiffs and those similarly situated for the full amount of the required minimum wage rate, an additional equal amount as liquidated damages as well as costs and reasonable attorney fees.

**<u>DEMAND FOR RELIEF</u>**

WHEREFORE, Plaintiffs request judgment against all Defendants and for an Order:

(a) Certifying a collective action pursuant to 29 U.S.C. § 216(b) consisting of all individuals employed by PrimeSource Health Group, LLC, PrimeSource Health Care Systems, Inc., an Indiana Corporation, and PrimeSource Health Care Services, Inc, an Illinois Corporation, and PrimeSource of Michigan, who worked as Clinical Assistants and/or as Patient Assistants, as described herein, and who were not paid for all hours worked, paid less than

the minimum wage, and/or denied overtime, at any time during three (3) years preceding the filing of original Complaint in this matter;

(b) Awarding to Plaintiffs and the FLSA Class Members unpaid wages as to be determined at trial together with any liquidated damages allowed by FLSA;

(c) Awarding Plaintiffs and the FLSA Class Members costs and disbursements and reasonable allowances for fees of counsel and experts, and reimbursement of expenses;

(d) Awarding Plaintiffs and the FLSA Class Members such other and further relief as the Court deems just and proper;

(e) For a judgment against Defendants for all damage, relief, or any other recovery whatsoever.

Respectfully submitted,

ERIN PFEFFERKORN, LOTTIE FARVER, and AMY PARKS, on behalf of themselves and all others similarly situated

/s/ Elizabeth A. Thompson
        One of their attorneys

Elizabeth A. Thompson
Arnstein & Lehr LLP
120 South Riverside Plaza, Suite 1200
Chicago, Illinois 60606
Phone: (312) 876-7100
Fax: (312) 876-0288
Email: eathompson@arnstein.com
*Local Counsel for Plaintiffs*

Chris P. Wido, *pending pro hac vice admission*
Brian D. Spitz, *pending pro hac vice admission*
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com
*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs demand a trial by jury by the maximum number of jurors permitted.

_/s/ Elizabeth A. Thompson_____