# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| ERIN PFEFFERKORN, *et al.*, | |
| Plaintiffs, | Case No. 17-cv-1223 |
| v. | |
|  | Judge John Robert Blakey |
| PRIMESOURCE HEALTH GROUP, LLC, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This putative collective action arises from alleged violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. [59]. Plaintiffs claim that PrimeSource Health Group, PrimeSource Health Care Systems, and PrimeSource of Michigan failed to fully pay Plaintiffs for hours worked, including overtime, and allege various theories of liability against the remaining defendants. *Id*. Multiple defendants jointly moved to dismiss the claims against them, [74], and to dismiss certain plaintiffs from the suit, [77]. For the reasons explained below, this Court partially grants and partially denies the motion to dismiss Plaintiffs' claims, and denies in full the motion to dismiss certain plaintiffs from this action.

## I. The Complaint's Allegations

### A. PrimeSource

Plaintiffs all worked for Defendants PrimeSource Health Group, PrimeSource Health Care Systems, and PrimeSource of Michigan (together, PrimeSource) as

1

Clinical Assistants, Clinical Assistant Supervisors, or Patient Assistants at some time during the three years preceding this case. *See* [59] ¶¶ 77, 234.

PrimeSource consists of a network of linked companies offering mobile medical services to long-term care facilities. *See id.* ¶¶ 24–30, 72–75. PrimeSource Group is the parent corporation of PrimeSource Health Care Systems, which is the parent company of PrimeSource Michigan (as well as other subsidiaries not named as defendants here). *See id.* ¶¶ 27–29. PrimeSource forms a single enterprise engaged in commerce and is thus subject to various requirements under the FLSA. *See id.* ¶ 30; 29 U.S.C. §§ 203(s)(1), 207(a)(1).

Plaintiffs allege that in the three years before they sued in February 2017, PrimeSource failed to pay them for all the hours they worked, and/or failed to pay them overtime wages when they worked over 40 hours in a week. [59] ¶ 234; [1]. As Clinical and Patient Assistants, Plaintiffs supported physicians that PrimeSource contracted to provide on-site medical care at nursing facilities throughout Illinois, Indiana, Michigan, and Kentucky. [59] ¶¶ 75, 77–78. They traveled to different sites during the work week, often to more than one facility in a day. *Id.* ¶ 78. Plaintiffs' responsibilities included: inspecting, maintaining, and repairing medical equipment, often while at home; travelling to care facilities to assist physicians and patients, on journeys that often lasted two to three hours each way; and shipping or transporting medical equipment and supplies to care facilities, often on what was ostensibly their own time. *Id.* ¶¶ 78–80, 83.

Plaintiffs claim that PrimeSource misclassified them as exempt from the FLSA's minimum wage and overtime requirements and therefore failed to pay Plaintiffs overtime when they worked more than 40 hours a week; failed to compensate Plaintiffs for travel time, despite the fact that they performed principal job duties while travelling; and failed to compensate Plaintiffs for the equipment maintenance and shipping work they performed from home, despite the fact that this, too, was a "principal job duty" and PrimeSource knew that Plaintiffs did this work. *Id.* ¶ 83. These alleged FLSA violations form the basis of Plaintiffs' suit. *See id.* ¶¶ 236–44.

In addition to suing corporate PrimeSource entities, Plaintiffs also sue individual PrimeSource officers, including Bobbie Richey and Traci Bernthal.[1] *See id.* at 2. At all relevant times, Richey served as PrimeSource's Senior Vice President of Clinical Services and/or Senior Vice President of Human Resources. *Id.* ¶ 50. In this role, Plaintiffs allege that she "supervised and/or controlled" their employment, acting in PrimeSource's interest. *Id.* ¶ 51. Richey contributed to PrimeSource's "budgetary process," which determined Plaintiffs' salaries, and she allegedly controlled PrimeSource's "day to day operations," including paying employees. *Id.* ¶ 52, n.15. Human Resources officials also played a role in determining which employees were exempt from FLSA requirements. *See* [59-33] at

---

[1] Plaintiffs also assert claims against other individual PrimeSource officers, but for brevity and clarity, this Court's discussion focuses on the individuals who joined the motions to dismiss: Richey, Bernthal, Annie Elliott, and Kenneth King. *See* [74, 77].

22–25; [52-2] at 8.² David Fleming, PrimeSource's owner, president, and CEO, specifically named Richey and Bernthal as two persons involved in PrimeSource's budget who would have "decided the salaries" for PrimeSource employees. [59] ¶ 48; [52-2] at 8.

Bernthal served as PrimeSource's Senior Vice President of Finance and also participated in the budget process, thus determining, at least in part, Plaintiffs' salaries. *Id.* ¶¶ 54, 56, n.16. Plaintiffs similarly allege that Bernthal "supervised and/or controlled" Plaintiffs' employment; controlled day-to-day operations (including methods of payment); and acted in PrimeSource's interest with respect to its employees. *Id.* ¶¶ 55–56. Bernthal's LinkedIn profile describes her responsibilities in this position, stating that she directed "all financial activities," secured "cost-effective financing for daily operations," managed a "135-vehicle fleet, payroll, accounts payable and purchasing functions," and advised the company owner and president as part of the "executive management team." [59-14] at 2–3.

Both Richey and Bernthal worked for PrimeSource until it ceased operating in or around December 2016. [59] ¶¶ 58, 76. Plaintiffs' claims against them are limited to the period before December 2016. *Id.* n.17.

---

² Plaintiffs and Defendants both ask this Court to consider the deposition of David Fleming, [52-2], which Plaintiffs cite in a footnote of the second amended complaint, but did not attach to it. *See* [59] n.15. Instead, Plaintiffs attached Fleming's deposition to an earlier memorandum of law seeking conditional certification of their putative collective action. *See* [52-2]. Although courts generally consider only the complaint and any attached documents on a motion to dismiss, *see Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013), this Court finds that it may judicially notice the deposition as an item "appearing in the record of the case" whose contents are "not subject to reasonable dispute," *see Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997), without converting the present motions to motions for summary judgment, *id.*

Plaintiffs allege that PrimeSource willfully violated the FLSA because it underwent Department of Labor (DOL) investigations in both 2003 and 2016 for FLSA violations. *Id.* ¶¶ 126, 128; [59-31]. The 2003 investigation did not address the exemption status of Clinical or Patient Assistants. [59] ¶ 127. Despite those investigations, and a lawsuit filed in May 2016 (discussed below), Plaintiffs allege that PrimeSource and its successors continued their unlawful pay practices through the end of 2016. *Id.* ¶¶ 84, 133. PrimeSource's attorneys during the relevant period have testified that they neither performed nor were asked to perform any research on the FLSA, and gave no advice regarding FLSA compliance. *Id.* ¶¶ 132.

Because PrimeSource ceased operating in or around December 2016, *id.* ¶ 76, the remainder of Plaintiffs' allegations seek to impose liability on PrimeSource's alleged successors or joint employers.

**B.    The Asset Sale**

In May 2016, a group of former Clinical and Patient Assistants employed by PrimeSource's Ohio subsidiary sued PrimeSource for the same FLSA violations stated here: namely, that PrimeSource misclassified them; failed to pay them for all hours worked; and failed to pay them overtime. *See id.* ¶ 84; *see also Wilson v. PrimeSource Health Care of Ohio, Inc.*, No. 16-cv-1298, 2017 WL 2869341 (N.D. Ohio July 5, 2017).

Plaintiffs allege that in July 2016, Defendant Advantage Capital Holdings (Advantage) organized and incorporated Defendant PrimeHealth Group LLC (PrimeHealth) "for the purposes of taking over and substantially continuing" PrimeSource's operations, which would officially wind down that fall. *See* [59] ¶¶

76, 85, 87. Advantage is the parent company or owner of PrimeHealth, whose subsidiary entities include PrimeHealth of Illinois, PrimeHealth of Indiana, PrimeHealth of Ohio, PrimeHealth of Michigan, and PrimeHealth of Kentucky. *Id.* ¶¶ 35, 36. Plaintiffs claim that Advantage employees—including Defendants Elliot and King—make all of PrimeHealth's management decisions, including hiring and firing, managing daily operations, and setting policies and procedures. *Id.* ¶ 38. In support, Plaintiffs allege that none of the PrimeHealth companies has its own CEO or president, and they all share common policies and guidelines created and promulgated by Advantage. *Id.* ¶¶ 42–43. Additionally, Elliott is a risk control officer for Advantage but also "holds herself out as the Vice President of PrimeHealth," though PrimeHealth does not pay her. *Id.* ¶¶ 60–61. King serves as president and CEO of both Advantage and PrimeHealth. *Id.* ¶ 62. Advantage employees also negotiated the transfer of leases and contracts from PrimeSource to PrimeHealth in the lead-up to PrimeHealth's purchase of assets from PrimeSource in September 2016. *See id.* ¶¶ 88–93; [59-18].

That purchase encompassed many of PrimeSource's assets, set out in an Asset Purchase Agreement (APA). *See* [59] ¶¶ 86–87; [59-17]. Specifically, PrimeHealth, PrimeSource (including all its affiliates *except* PrimeSource Healthcare of Ohio), and Fleming (the president, owner, and CEO of PrimeSource) entered the APA in September, with a closing date in October 2016. *See* [59] ¶¶ 48, 87; [59-17]. The APA provided for PrimeHealth's acquisition of PrimeSource's leased real and personal property, including its corporate headquarters in Buffalo

Grove, Illinois, and its intellectual property, including its trademarks, brand names, logos, internet domain names, web addresses, and social media accounts. [59] ¶¶ 24, 94–98; [59-17]. The APA also provided that the parties would devise a Management Oversight Agreement (MOA) to govern the transition period from the APA's closing date in October 2016 to December 2016, when PrimeSource shuttered its operations. [59] ¶¶ 109, 123. Plaintiffs allege that under the MOA, PrimeHealth, Advantage, and PrimeSource jointly employed Plaintiffs. *See id.* ¶¶ 123–25.

Plaintiffs allege that when PrimeHealth executed the APA, they and/or Advantage knew of the Ohio FLSA suit, as well as PrimeSource's "identical illegal pay practices as to all Clinical Assistants and Patient Assistants." *See id.* ¶ 102. In support, they point out that the APA references the Ohio litigation—even though the purchase did not include PrimeSource's Ohio subsidiary—and notes that the litigation "may affect" other entities. *Id.* ¶ 103; [59-17] at 5.

During the October to December 2016 transition period, PrimeHealth notified most of the care facilities previously serviced by PrimeSource of the asset purchase, and stated that PrimeHealth would "continue to provide" the facilities with the same services, using "physicians and clinicians" that the facilities were "familiar with." *Id.* ¶ 100. These transition letters also noted that the facilities' "contacts" and "Customer Care line" had not changed. *Id.* Additionally, PrimeHealth's website (www.seniorwell.com) retained the same format, language, and stock art as PrimeSource's website through approximately February 2017, and displayed a

photograph of PrimeHealth's offices—in PrimeSource's former premises, with PrimeSource's name still on the building. [59] ¶ 101.

In October 2016, PrimeSource sent a Worker Adjustment and Retraining (WARN) notice to the employees at its Indiana, Ohio, and Michigan subsidiaries, informing them that they would be laid off on or by December 31, 2016, when PrimeSource closed. *Id.* ¶ 104. Soon after, PrimeHealth sent unsolicited offer letters to "a majority of PrimeSource's employees," and ultimately rehired "a substantial number" of PrimeSource employees. *Id.* ¶¶ 105, 108, 110–12. Elliot signed PrimeHealth's offer letters. *Id.* ¶ 106.

By the end of 2016, PrimeSource ceased its operations. *Id.* ¶ 76. PrimeHealth continued to operate, employing many of PrimeSource's former employees. *Id.* ¶¶ 108, 110–12. Starting January 2, 2017, PrimeHealth stopped paying its Clinical and Patient Assistants a salary, and began paying them hourly. *Id.* ¶ 119. In February 2017, Plaintiffs filed this suit, containing a single claim for FLSA violations. [1]. They amended their complaint in March and July. [9, 59]. But the action in this case did not stop there, as discussed next.

## C.   The DOL Settlement

At some point in 2016, DOL began investigating PrimeSource's wage and hour practices, resulting in a settlement in May 2017. *Id.* ¶¶ 113, 114. DOL has authority to supervise settlements for unpaid wages or overtime, and oversee the ensuing payments to employees from whom employers improperly withheld wages. *See* 29 U.S.C. § 216(c). Under the FLSA, "the agreement of any employee to accept

such payment shall upon payment in full constitute a waiver by such employee" to sue in his or her own right. *Id.*

Following the DOL settlement, PrimeSource began "issuing checks to Plaintiffs and those similarly-situated" along with a letter describing the check as containing "back pay," and the DOL's WH-58 form, which primarily functions as a receipt for FLSA settlement checks. [59] ¶ 115; [46-3] at 2. PrimeSource's letter instructed recipients to sign the enclosed form and return it to the Buffalo Grove office. [59] ¶ 117. The letter did not mention the pending collective action before this Court, or the fact that signing the enclosed form would waive the employee's individual right to sue. *See id.*; *see also* [46-3] at 1.[3] The WH-58 form, however, contains a "notice to employee," stating:

> Your acceptance of this payment of wages and/or other compensation due under the Fair Labor Standards Act (FLSA) or Family Medical Leave Act (FMLA), based on the findings of [DOL's Wage and Hour Division] means that you have given up the right you have to bring suit on your own behalf for the payment of such unpaid minimum wages or unpaid overtime compensation for the period of time indicated above [and other damages].

[46-3] at 2. The "period of time" indicated on the WH-58 forms sent to PrimeSource employees covers November 15, 2014 to November 12, 2016. *Id.*

This opinion addresses two motions: (1) a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), brought by Defendants PrimeHealth,

---

[3] This Court takes judicial notice of the copy of PrimeSource's letter and the WH-58 form submitted with Plaintiffs' earlier motion for a temporary restraining order. *See* [46-3]. This Court again finds this previously submitted exhibit to be an item "appearing in the record of the case" whose contents are "not subject to reasonable dispute," *see Gen. Elec. Capital Corp.*, 128 F.3d at 1081; *see also ABN AMRO, Inc. v. Capital Int'l Ltd.*, No. 04-c-3123, 2007 WL 845046, at *8 (N.D. Ill. Mar. 16, 2007), since Defendants did not previously and do not now contest the documents' accuracy, *see generally* [48, 76, 89]. Indeed, Defendants proffer copies of the WH-58 as exhibits themselves, as discussed below. *See* [77-1, 77-2].

Advantage, Richey, Bernthal, Elliott, and King, [74]; and (2) a motion to dismiss certain Plaintiffs under Rule 12(b)(1), brought by the same Defendants together with PrimeSource, [77].

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson*, 714 F.3d at 436.  Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

In evaluating a complaint, this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678.  This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  On a motion to dismiss, this Court may consider the complaint itself, documents attached to the complaint,

documents central to the complaint and to which the complaint refers, and information properly subject to judicial notice. *Williamson*, 714 F.3d at 436.

A motion under Rule 12(b)(1) seeks to dismiss a case for lack of subject matter jurisdiction. Courts evaluating such motions still accept all the allegations in the complaint, but can also consider "whatever evidence has been submitted on the issue" to determine whether subject matter jurisdiction exists. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995); *see also Maximum Indep. Brokerage, LLC v. Smith*, 218 F. Supp. 3d 630, 635 (N.D. Ill. 2016).

## III. Analysis

Plaintiffs' claim centers on PrimeSource's allegedly improper pay practices before it closed at the end of 2016. Plaintiffs seek to impose liability for those practices on additional individuals and entities, including: (1) PrimeHealth, as PrimeSource's successor and as a joint employer during the 2016 transition period; (2) Advantage, on the same grounds, and as PrimeHealth's alleged alter ego; and (3) various employees of PrimeSource, PrimeHealth, and Advantage as joint employers with PrimeSource. *See* [87] at 4, 5, 8, 9. These Defendants moved to dismiss the claim against them, [77], and this Court addresses each moving defendant in turn. Finally, this Court also addresses whether it must dismiss certain plaintiffs from this action for having waived their right to sue under the FLSA.

### A. PrimeHealth

#### 1. Successor Liability

Successor liability, a longstanding doctrine of federal common law, provides "the default rule in suits to enforce federal labor or employment laws," including the

FLSA. *Teed v. Thomas & Betts Power Sols., LLC*, 711 F.3d 763, 769 (7th Cir. 2013); *see also Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1326–27 (7th Cir. 1990). A plaintiff asserting successor liability must show that: (1) the successor had notice of the claim before the acquisition; and (2) the business' operation before and after the sale exhibited substantial continuity. *See Tsareff v. ManWeb Servs., Inc.*, 794 F.3d 841, 845 (7th Cir. 2015). Successor liability is intended to "protect federal rights or effectuate federal policies," and, as an equitable doctrine, must be applied with careful "emphasis on the facts of each case." *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995); *see also Tsareff*, 794 F.3d at 845. Defendants contend that Plaintiffs fail to allege that PrimeHealth had sufficient notice of PrimeSource's FLSA liability or that PrimeHealth substantially continued PrimeSource's operations. [76] at 6–7.

### a) Notice

A party may satisfy the notice prong of successor liability "not only by pointing to the facts that conclusively demonstrate actual knowledge, but also by presenting evidence that allows the fact finder to imply knowledge from the circumstances." *Artistic Furniture*, 920 F.2d at 1329. For example, the fact that management staff in the predecessor company continued in those positions under the successor supports an inference of sufficient notice. *See United States ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F. Supp. 2d 695, 709 (N.D. Ill. 2012). Notice of the violations forming the basis of a claim, rather than the precise legal claim at issue, may also suffice. *See id.* (allegations that successor company's officer

knew of misconduct at predecessor company supported finding notice on a motion to dismiss).

Here, the parties agree that before PrimeHealth purchased PrimeSource's assets, PrimeHealth knew of the pending FLSA suit against PrimeSource's Ohio subsidiary, which the APA expressly referenced. *See id*. at 6; [59] ¶ 103. But since the asset purchase did not include PrimeSource of Ohio, and the suit against PrimeSource in Ohio included no allegations as to PrimeSource's other subsidiaries, Defendants argue that PrimeHealth lacked notice of the present claims against different PrimeSource entities. [76] at 6.

Generally, this Court does not notice the court documents in other proceedings for the truth of the factual matters contained within the documents, because judicial notice usually remains limited to "recognizing the judicial act or litigation filing." *ABN AMRO, Inc. v. Capital Int'l Ltd.*, No. 04-c-3123, 2007 WL 845046, at *8 (N.D. Ill. Mar. 16, 2007). This Court does, however, notice that the original complaint in the Ohio litigation named PrimeSource Health Care Systems—a defendant in this action and the parent of PrimeSource's state-level subsidiaries—and Fleming—PrimeSource's owner and CEO—as defendants. *See id.; see also Gen. Elec. Capital Corp.*, 182 F.3d at 1081 n.6; [59] ¶¶ 27–29, 48; Complaint at 1, *Wilson*, No. 16-cv-1298 (May 27, 2016).

Plaintiffs also allege that at the time of the APA's execution, PrimeHealth and/or Advantage knew of PrimeSource's "identical illegal pay practices" across its corporate structure. [59] ¶ 102. The APA itself notes that the Ohio litigation "may

affect" other PrimeSource entities. [59-17] at 5. Finally, various management-level PrimeSource employees (including Richey and Bernthal) continued in management positions at PrimeHealth, a relevant factor in assessing notice. *See* [59] ¶ 110; *Geschrey*, 922 F. Supp. 2d at 709.

Overall, Plaintiffs plead sufficient facts to permit the reasonable inference that PrimeHealth knew of PrimeSource's alleged FLSA violations, and knew that liability for those violations extended beyond PrimeSource of Ohio. *See Iqbal*, 556 U.S. at 678; *Artistic Furniture*, 920 F.2d at 1329. That suffices to show notice at this stage of the proceedings. *See Geschrey*, 922 F. Supp. 2d at 709.

### b)    Continuity

Plaintiffs may demonstrate continuity of operations by showing that the alleged successor used the predecessor's workforce, equipment, and premises, and retained management-level employees. *See Artistic Furniture*, 920 F.2d at 1329. Continuing to provide the same services as the predecessor is another relevant factor. *See Chi. Truck Drivers*, 59 F.3d at 49. The continuity determination must always be tailored to the facts of the case, *Tsareff*, 794 F.3d at 845, and where plaintiffs seek only monetary relief, they may make a lesser showing of continuity, *see Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 751–52 (7th Cir. 1985).

Here, Plaintiffs clearly show sufficient continuity of operations between PrimeSource and PrimeHealth. In addition to retaining numerous employees in management and other positions, [59] ¶ 110, PrimeHealth took over PrimeSource's headquarters, equipment, clients, services, and all of its affiliates save PrimeSource of Ohio, *id*. ¶¶ 24, 95–101; [59-17] at 1–2. Given the record here, the allegations

14

suffice to survive a motion to dismiss. *See Artistic Furniture*, 920 F.2d at 1329; *Geschrey*, 922 F. Supp. 2d at 710.

## 2. Joint Employer

Plaintiffs also sue PrimeHealth as a joint employer with PrimeSource during the 2016 transition. *See* [59] ¶¶ 123–25. The FLSA's expansive definition of "employer" contemplates that two or more entities may jointly employ an individual. *See Falk v. Brennan*, 414 U.S. 190, 195 (1973); *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1207 (7th Cir. 1986); *see also* 29 C.F.R. §§ 791.2(a), (b). Generally, "for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination" depends upon the facts of the case. *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns. Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008) (construing joint-employer status under the FMLA and noting that it "mirrors" the corresponding FLSA regulation). Courts consider various factors when assessing a claim of joint-employer status, though the "economic reality of the situation controls whether the FLSA applies." *Anaya v. Directv, LLC*, No. 14-cv-5703, 2016 WL 1383195, at *3 (N.D. Ill. Apr. 7, 2016) (citing *Moldenhauer*, 536 F.3d at 644; *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)).

Here, however, this Court cannot proceed with that traditional analysis because Plaintiffs confine their joint-employer claim against PrimeHealth to the October to December 2016 transition period. *See* [59] ¶¶ 123–25. Specifically, Plaintiffs assert that, pursuant to a provision in the APA, PrimeHealth "entered into a management agreement" covering this period—presumably with

PrimeSource, though the amended complaint does not specify. *Id.* ¶ 123. They then state that between October and December 2016, PrimeHealth and/or Advantage jointly employed Plaintiffs together with PrimeSource. *Id.* ¶ 124. Absent more factual pleadings describing the alleged management agreement, such a conclusory statement that merely echoes the elements of a joint-employer claim cannot withstand a motion to dismiss. *See Limestone Dev. Corp.*, 520 F.3d at 803.

In their brief, Defendants quote what they purport to be the "Management Oversight Agreement" (MOA), setting forth various terms governing management services during the 2016 transition. *See* [76] at 11–12; [59] ¶ 123. But neither party filed the MOA itself with this Court. Neither party provides any basis upon which a court ruling on a motion to dismiss may consider a document that is neither attached to the complaint, central to the complaint, nor subject to judicial notice. *See Williamson*, 714 F.3d at 436. Obviously, such unsubstantiated outside material cannot be considered on a motion to dismiss. Without the MOA, Plaintiffs' allegations fail to support their joint-employer claim as to either PrimeHealth or Advantage. As such, this Court dismisses those claims without prejudice.

### B. Advantage Capital Holdings

Plaintiffs seek to hold Advantage liable for PrimeSource's FLSA violations under various theories. First, as a joint-employer for the 2016 transition period, [59] ¶¶ 123–25, which this Court already addressed. Next, as another successor to PrimeSource, either as the parent company or alter ego of PrimeHealth. *See id.* ¶¶ 36–47; [87] at 4–5. This Court addresses the remaining theories in turn.

### 1.    Successor

This Court has already discussed the elements of federal successor liability. For Advantage to be subject to successor liability as PrimeHealth's parent corporation, Plaintiffs must show that Advantage "exercises significant authority over the subsidiary's employment practices." *Teed*, 711 F.3d at 764; *see also Barker v. Quick Test, Inc.*, No. 13-c-4369, 2016 WL 1019708, at *18 (N.D. Ill. Mar. 15, 2016). This inquiry shares some commonalities with the joint-employer inquiry, *see Teed*, 711 F.3d at 764 (citing with approval Third and Eleventh Circuit cases discussing joint employer status), such as whether the parent corporation had hiring and firing authority, developed internal rules, processed the subsidiary's payroll, or exercised other related powers, *see Barker*, 2016 WL 1019708, at *18 (citing *Teed* and discussing these factors); *see also Moldenhauer*, 536 F.3d at 644 (discussing joint-employer factors, including whether the company controlled pay and benefits, supervised daily activities, or determined salaries).

Here, Plaintiffs allege that Advantage controls all of PrimeHealth's management decisions, including hiring and firing, managing daily operations, and setting internal policies. [59] ¶ 38. Specifically, Plaintiffs claim that PrimeHealth lacks its own policies, guidelines, CEO, and President. *See id*. ¶¶ 42–43. Instead, its CEO and president is King, the CEO and president of Advantage, and its Vice President is Elliott, another Advantage officer. *Id*. ¶¶ 60–62. Indeed, Elliott signed the offer letters that PrimeHealth sent out to the majority of PrimeSource's employees during the 2016 transition period. *Id*. ¶¶ 105–06.

Such allegations permit this Court to draw the reasonable inference that Advantage exercised "significant authority" over PrimeHealth's employment practices. *See Iqbal*, 556 U.S. at 678; *Teed*, 711 F.3d at 764. Plaintiffs' claims indicate that Advantage sets PrimeHealth's internal policies, significantly controls its management, and holds hiring authority. *Cf. Barker*, 2016 WL 1019708, at *18 (ruling against plaintiffs where the record showed that the parent lacked hiring and firing authority and did not set the subsidiary's internal rules or engage in "related administrative actions"). Plaintiffs' claim may therefore proceed against Advantage on a successor theory of liability.

### 2.    Alter Ego

Illinois law[4] does not favor alter-ego claims, and a party seeking to pierce the corporate veil "bears the burden of showing that the corporation is in fact a dummy or sham for another person or entity." *Jackson Ave. Subs, Inc. v. 407 Dearborn, LLC*, No. 16-cv-4697, 2016 WL 4639152, at *6 (N.D. Ill. Sept. 6, 2016) (internal quotation marks omitted). Accordingly, Plaintiffs must show: (1) "such unity of interest and ownership that the separate personalities of the corporation" and the individual or entity behind it no longer exist; and (2) circumstances indicating that "adherence to the fiction of separate corporate existence would sanction a fraud or

---

[4] The parties assume that Illinois law governs Plaintiffs' alter ego claim. *See* [74] at 4; [87] at 6. This Court agrees, given the undisputed allegation that PrimeHealth Group, LLC, is an "Illinois limited liability company." [59] ¶ 32. Illinois applies "the law of the state of incorporation for veil piercing claims," *Banco Panamericano*, 674 F.3d at 751, which may be levied against limited liability companies and other corporate forms, *see Wachovia Secs., LLC v. Neuhauser*, 528 F. Supp. 2d 834, 854 (N.D. Ill. 2007) (applying Illinois veil-piercing analysis to a limited liability company); *see also Benzakry v. Patel*, 77 N.E.3d 1116, 1132 (Ill. App. Ct. 2017) (same).

promote injustice." *Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751–52 (7th Cir. 2012).

To assess the "unity of interest and ownership" element, courts consider factors including: "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) non-functioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a shareholder; (10) failure to maintain arm's length relationships among related entities; and (11) whether the corporation is a mere façade for the operation of the dominant shareholders." *Wachovia Secs., LLC v. Neuhauser*, 528 F. Supp. 2d 834, 854–55 (N.D. Ill. 2007) (internal quotation marks omitted); *see also Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 778 (Ill. App. Ct. 2005). No single factor is dispositive. *Neuhauser*, 528 F. Supp. 2d at 855.

Here, Plaintiffs allege that Advantaged incorporated PrimeHealth "for the purposes of taking over and substantially continuing" PrimeSource's operations. [59] ¶ 85. They also allege the overlap of PrimeHealth and Advantage officers, and the control that Advantage maintains over PrimeHealth's internal policies, hiring decisions, and day-to-day operations, discussed above. *See id*. ¶¶ 38, 42–43, 60–62, 105–106. Plaintiffs also state in conclusory terms that PrimeHealth is Advantage's alter ego; that Advantage "exercises complete domination" over PrimeHealth; and that PrimeHealth is undercapitalized, "does not follow corporate formalities, does

not maintain its own corporate records, and returns any and all profits" to Advantage. *Id.* ¶¶ 39–41.

These last allegations simply recite the elements of an alter ego claim— supported "by mere conclusory statements"—and cannot sustain Plaintiffs' claim. *Limestone Dev. Corp.*, 520 F.3d at 803. Plaintiffs' more specific allegations tend to show a failure to observe corporate formalities or to preserve an "arm's length relationship" between Advantage and PrimeHealth. *See Fontana*, 840 N.E.2d at 778. Though relevant, these allegations standing alone fall short of the "substantial showing" required to demonstrate that PrimeHealth is "really a dummy or sham" for Advantage. *Banco Panamericano*, 674 F.3d at 752. Although Plaintiffs show that Advantage undoubtedly exercised significant control over PrimeHealth, Plaintiffs fail to plead sufficient facts allowing the inference that PrimeHealth was a mere "sham," lacking a meaningfully independent existence. *See id.*; *cf. Gajda v. Steel Sols. Firm, Inc.*, 39 N.E.3d 263, 272 (Ill. App. Ct. 2015) (plaintiffs sufficiently pled alter ego claim by alleging that the two companies operated out of the same location; commingled funds and equipment; issued improper loans to each other; and that employees of the sham company were paid with the true owner's funds).

Because Plaintiffs must satisfy both elements of an alter ego claim, this Court need not proceed to the injustice prong. *See Banco Panamericano, Inc.*, 674 F.3d at 751–52. This Court dismisses Plaintiffs' alter ego claim against Advantage without prejudice.

### C. Individual Defendants

#### 1. Richie and Bernthal

Plaintiffs' claims against Richie and Bernthal apply only to their employment as PrimeSource officers for the period within the statute of limitations, from approximately February 2014 to December 2016. *See* [59] at 9 n.17. Plaintiffs allege that during this time Richie and Bernthal were their employers within the meaning of the FLSA. *Id.* ¶¶ 53, 57. Defendants argue that Plaintiffs fail to show that Richie and Bernthal had the necessary authority to be considered employers under the Act. *See* [76] at 7.

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). As noted above, the FLSA contemplates that individuals may report to multiple employers. *See Falk*, 414 U.S. at 195; *Karr*, 787 F.2d at 1207. Courts "assess the economic reality of the working relationship to determine whether an individual is an employer under the FLSA." *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015) (internal quotation marks omitted). Relevant factors include whether the alleged employer: "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Id.* (internal quotation marks omitted).

Here, Plaintiffs plausibly allege that Richey and Bernthal played a significant role in determining Plaintiffs' pay and overseeing their working conditions. As Vice Presidents of Human Resources and Finance, respectively, both

Richey and Bernthal participated in the budgetary process that set Plaintiffs' salaries. [59] ¶ 48; [52-2] at 8. Human Resources played some role in determining whether Plaintiffs were exempt from FLSA requirements, *see* [52-2] at 8, and Bernthal described her responsibilities as Vice President of Finance as including management of payroll and control of certain daily operations, including financing and transportation, *see* [59-14] at 2–3. These allegations more than satisfy Rule 8's requirement that Plaintiffs provide fair notice of a plausible FLSA claim. *See Deschepper*, 84 F. Supp. 3d at 778; *see also Nehmelman v. Penn. Nat'l Gaming, Inc.*, 790 F. Supp. 2d 787, 798–99 (N.D. Ill. 2011) (plaintiffs sufficiently pled employer status by alleging that a company controlled their "rate and method of payment and certain terms and conditions of their employment," while providing "specific examples of the allegedly unlawful pay practices").

Defendants point to other cases from this district where courts found individuals to be employers based upon their ownership interest in the company, day-to-day control of the company's operations, and their involvement in supervising and paying employees. *See, e.g., Cardenas v. Grozdic*, No. 12-c-292, 2012 WL 2359399, at *4 (N.D. Ill. June 20, 2012). Such circumstances undoubtedly show employer status, but nothing in these cases suggests that they are necessary conditions for such a finding. *See id.*; *see also Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 646 (N.D. Ill. 2007). Indeed, these cases acknowledge the "expansiveness" of the FLSA's definition of "employer," and that individuals with supervisory authority may be liable as employers even if they are only partly

responsible for the alleged violation. *Cardenas*, 2012 WL 2359399, at *4 (citing *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987)).

Moreover, the cases that Defendants cite also follow the accepted rule that individuals may be liable as employers where they had "sufficient control" over the "particular violations" at issue. *Morgan*, 625 F. Supp. 2d at 646; *see also Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d 690, 698 (N.D. Ill. 2015) ("In sum, the test is to look at all facts surrounding the defendant's supervision of the employee and determine whether the defendant exercised control and authority over the employee in a manner that caused the FLSA violation (at least in part)."). Here, Plaintiffs specifically allege Richey and Bernthal's involvement in the payment decisions at issue here—namely, whether Plaintiffs should have been classified as exempt and denied payment for hours worked and overtime. [59] ¶¶ 48, 54–56; [52-2] at 8; [59-14] at 2–3. Plaintiffs thus sufficiently allege that Richey and Bernthal exercised control over the challenged pay practices. *See Schneider*, 148 F. Supp. 3d at 698; *Nehmelman*, 790 F. Supp. 2d at 797 (noting the minimal pleading requirements for "simple" claims of FLSA violations).

Finally, Defendants contend that Plaintiffs plead themselves out of a claim against Richey and Bernthal by alleging that they answered to Elliott and King, or by alleging that various defendants employed Plaintiffs within the same period. *See* [76] at 12–13. Not so. As discussed, the FLSA contemplates two or more persons or entities acting as an individual's employer, *see Karr*, 787 F.2d at 1207, and an individual need only be partially responsible for the FLSA violation to have

personal liability for it, *see Schneider*, 148 F. Supp. 3d at 698. In any event, Rule 8 permits the pleading of such purported inconsistencies. *See Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 597 (7th Cir. 2012). This Court denies Defendants' motion to dismiss as to Richey and Bernthal.

### 2.     Elliott and King

Plaintiffs allege that Elliott and King were also their employers within the meaning of the FLSA. [59] ¶¶ 65–67. Their claims against Elliott and King apply only to the 2016 transition period. *Id.* at 10 n.18. Plaintiffs allege that in that period Elliott and King "directed the day to day operations of the PrimeSource Defendants," "controlled the operations and labor and compensation policies of PrimeSource," "supervised and/or controlled" Plaintiffs' employment," and "acted directly or indirectly in the interest of the PrimeSource Defendants in relation to their employees." *Id.* ¶¶ 65–67.

These conclusory allegations, however, merely recite the elements of FLSA employer status, and thus fail to support Plaintiffs' claim. *Limestone Dev. Corp.*, 520 F.3d at 803. The present pleadings offer no underlying factual detail, such as information about the management structure of PrimeSource and PrimeHealth, or any other important facts, during the transition period. Thus, Plaintiffs fail to allege sufficient detail to raise their claims against Elliott and King from the possible to the plausible. *See Iqbal*, 556 U.S. at 678; *Williamson*, 714 F.3d at 436. This Court dismisses Plaintiffs' claims against Elliott and King without prejudice.

### D.     Waiver of Right to Sue

Defendants seek to dismiss multiple Plaintiffs from this suit under Rule 12(b)(1) on the grounds that they waived their individual right to sue under the FLSA by accepting the DOL settlement with PrimeSource.  *See* [77] at 1.

Generally, waiver constitutes an affirmative defense that Plaintiffs need not "anticipate and attempt to plead around" at this stage.  *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).  Defendants, however, bring their motion under Rule 12(b)(1)—the avenue for motions contesting subject matter jurisdiction—on the grounds that Plaintiffs' alleged waiver moots their claims.  *See* [77] at 4; *see also Victoria v. Alex Car, Inc.*, No. 11-c-9204, 2012 WL 1068759, at *2–4, *5 (N.D. Ill. Mar. 29, 2012) (acknowledging that waiver is generally an affirmative defense but still assessing defendants' waiver argument under Rule 12(b)(1) "because the DOL waivers allegedly mooted Plaintiffs' claims").  The distinction matters because, on a properly raised Rule 12(b)(1) motion, this Court may consider other evidence beyond the pleadings.  *See Ezekiel*, 66 F.3d at 897.

Even considering it under Rule 12(b)(1), however, Defendants' motion fails.  Here, many Plaintiffs received settlement checks from PrimeSource following its settlement with DOL in May 2017.  *See* [77] at 4; [59] ¶¶ 113–15, 117.  PrimeSource sent the checks to Plaintiffs together with DOL's WH-58 form, which contained a notice that "acceptance of this payment" meant that the recipient gave up the right "to bring suit on your own behalf for the payment of such unpaid minimum wages or unpaid overtime compensation for the period of time" covered by the settlement. [59] ¶ 115; [46-3] at 2.  The WH-58 notice reflects the FLSA provision authorizing

DOL to enter into such settlements and stating that "the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee" to sue in their own right. *See* 29 U.S.C. § 216(c). Defendants offer evidence that one group of plaintiffs signed the WH-58 form and cashed the settlement checks, [77-1], while a second group cashed the checks without signing the form, [77-2], and argue that these actions constitute waiver under § 216(c), [77] at 4–6.

This Court denies Defendants' motion to dismiss the plaintiffs in the second group because the Seventh Circuit has made it clear that merely cashing a DOL settlement check does not waive an individual's right to sue under the FLSA. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). Instead, validly waiving the right to sue requires two "distinct" acts: "agreement" and "payment in full." *Id.* at 305–06. Thus, evidence of the payment alone does not establish waiver: "There must also be a release." *Id.* at 306; *see also Jackson v. Go-Tane Servs. Inc.*, No. 99-c-5686, 2001 WL 826867, at *3 (N.D. Ill. July 18, 2001) (citing *Walton*, 786 F.2d at 307; *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 540 (5th Cir. 1977)). Absent any showing that this group of plaintiffs executed a release or otherwise agreed to waive their right of action, they may participate in this action. *See Walton*, 786 F.2d at 307.

Based upon the record, this Court also denies Defendants' motion to dismiss the plaintiffs who signed the WH-58 because Plaintiffs raise material questions of fact about that waiver's validity. *See* [59] ¶¶ 115, 117; [46-3]. Courts that have

considered the waiver argument on a motion to dismiss follow the general rule that such questions of fact may not be resolved at this stage. *See Victoria*, 2012 WL 1068759, at *4; *Woods v. RHA/Tenn. Grp. Homes, Inc.*, 803 F. Supp. 2d 789, 801 (M.D. Tenn. 2011). Accordingly, Defendants' citations to cases decided at summary judgment have little relevance at this point in the proceedings. *See, e.g.*, *Carino v. B&M Auto Collisions Ctr.*, No. 03-c-3394, 2004 WL 413299 (N.D. Ill. Jan. 30, 2004).

In *Walton*, the Seventh Circuit analogized FLSA § 216(c) waivers to private settlements, emphasizing the need for an actual agreement to show "a release" of the right to sue. *See* 786 F.2d at 306. Thus, this Court must determine whether "the plaintiffs *meant* to settle" their FLSA claims. *Id.* at 306 (emphasis added). The Ninth Circuit has held that "an employee does not waive" his or her right of action pursuant to § 216(c) "unless he or she agrees to do so after being fully informed of the consequences." *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1146 (9th Cir. 2007). Following that analysis, district courts have concluded that an "employee's choice to waive his or her right to file private claims—that is, the employee's agreement to accept a settlement payment—must be informed and meaningful." *Woods*, 803 F. Supp. 2d at 800 (citing *Dent*, 502 F.3d at 1146; *Walton*, 786 F.2d at 306); *see also Victoria*, 2012 WL 1068759, at *4. As a result, "no waiver exists when the employer affirmatively misstates material facts regarding the waiver, withholds material facts, or unduly pressures employees to sign the form." *Victoria*, 2012 WL 1068759, at *4 (citing and adopting *Woods*, 803 F. Supp. 2d at 801).

Here, Plaintiffs call into question whether PrimeSource withheld material facts when it sent Plaintiffs' settlement checks. The letter from PrimeSource accompanying the settlement check stated:

> A check for back wages and a form explaining the payment are enclosed. There are two copies of the form explaining payment. Complete both copies of the form with your signature, the date, and your address. Please return both copies in the enclosed, postage paid envelope.

This brief letter describes the check as one for "back wages" without mentioning that it resulted from DOL settling claims for overtime and unpaid hours. It does not mention the fact of a settlement at all, nor that signing the WH-58 would waive the employee's right to sue, nor that the employee could refuse the check, nor that this collective action was already pending before this Court. These are relevant factors in determining whether a purported waiver was "informed and meaningful." *Woods*, 803 F. Supp. 2d at 800–01; *see also Victoria*, 2012 WL 1068759, at *4. This Court agrees with *Woods* that an "employer should not be allowed to short circuit" an employee's right to choose to pursue a private action, 803 F. Supp. 2d at 801, particularly in light of the FLSA's clear goal of discouraging employees from signing away their right to a fair wage, *see Walton*, 786 F.2d at 306 (noting that the FLSA bans private settlements about pay disputes to prevent parties from establishing "sub-minimum wages").

The precise scope of such an exception to a §216(c) waiver remains uncertain, but plaintiffs sufficiently call into question the validity of any alleged waivers to survive Defendants' motion to dismiss. *See Victoria*, 2012 WL 1068759, at *4.

### E.     Remaining Issues

Throughout their briefing on the present motions, Defendants throw in a grab bag of additional, unrelated arguments contesting Plaintiffs' inclusion of specific plaintiffs, defendants, and pleadings.   This Court addresses those remaining issues here.

First, Defendants argue (for the first time) in a reply brief that Plaintiffs' claims can only include the two years prior to this suit, since Plaintiffs insufficiently plead the willfulness required to extend the statute of limitations to three years. *See* [89] at 8.   Generally, arguments raised for the first time on reply are waived, *United States v. LaShay*, 417 F.3d 715, 719 (7th Cir. 2005), but this Court permitted Plaintiffs to file a sur-reply and now addresses the argument, *see CHC Cobrasource, Inc. v. Mangrove Cobrasource, Inc.*, No. 12-c-1832, 2012 WL 1952930, at *1 (N.D. Ill. May 30, 2012) (collecting cases permitting consideration of new arguments where court allowed a sur-reply).

Here, Plaintiffs allege that PrimeSource knew of the FLSA's requirements, having been the subject of a DOL investigation in 2003, and yet failed to take any actions to comply; this permits the plausible inference that any subsequent FLSA violations were willful.   *See* [59] ¶¶ 113–21; *Cunningham v. Gibson Elec. Co. Inc.*, 43 F. Supp. 2d 965, 977 (N.D. Ill. 1999) (knowledge of FLSA requirements and failure to comply can show willfulness); *see also Guon v. John Q. Cook M.D. LLC*, No. 16-c-3840, 2016 WL 6524948, at *3 (N.D. Ill. Nov. 3, 2016) (permitting discovery to determine willfulness based upon "relatively conclusory" allegations, since a statute of limitations defense "need not be anticipated in the pleadings").

Accordingly, at this stage, this Court declines to dismiss any part of Plaintiffs' claim on the grounds that the two-year FLSA statute of limitations applies.

Next, Defendants seek to dismiss Jennifer Walton as a plaintiff, on the grounds that PrimeSource dismissed her beyond even the three-year statute of limitations. *See* [77] at 9. Plaintiffs concede this point. [86] at 2 n.1. Based upon the parties' representations, this Court dismisses Walton as a plaintiff.

Defendants also seek to dismiss any claims relating to Ohio state law. [76] at 13. This Court notes that Plaintiffs appear to mistakenly invoke the Ohio state-law definition of an "employer" in their amended complaint, [59] ¶ 46, but their claim still alleges only FLSA violations, *id.* ¶¶ 236–44. This Court cannot rule on state claims not pending before it. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (explaining that Article III's case or controversy requirement requires an actual controversy "at all stages of review") (internal quotation marks omitted).

Defendants next ask this Court to strike PrimeSource Health Care Systems, Inc., on the grounds that Plaintiffs admit that "no such entity exists." [76] at 13. Defendants' characterization, however, is not quite accurate. In their motion to amend their first amended complaint, Plaintiffs noted that they mistakenly included this defendant twice in the case caption; Plaintiffs therefore sought to strike the duplicative mention of this entity. *See* [56] at 2–3. Absent some valid reason why PrimeSource Health Care Systems may not be party to this action, this Court denies the motion to strike this defendant.

Finally, Defendants invoke Federal Rule 11, seeking sanctions for Plaintiffs' alleged misuse of Fleming's testimony. *See* [76] at 9. Setting aside the questionable nature of the request, this Court will not rule on it since Defendants have failed to comply with all of the prerequisites of a Rule 11 motion, and have not otherwise offered it "separately from any other motion." Fed. R. Civ. P. 11(c)(2).

### F.     Leave to Replead

Rule 15(a)(2) instructs courts to freely give leave to amend "when justice so requires." This opinion constitutes the first time this Court has addressed the sufficiency of Plaintiffs' allegations, and absent any sound basis to deny Plaintiffs the opportunity to amend their complaint, this Court follows the general rule of dismissing the claims without prejudice. *See Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). Accordingly, Plaintiffs may replead any dismissed claims, although failure to correct the deficiencies outlined here may result in a future dismissal with prejudice. *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

## IV.     Conclusion

This Court denies Defendants' motion to dismiss certain Plaintiffs.    [77].
This Court partially grants and partially denies Defendants' motion to dismiss
Plaintiffs' claims.   [76].   Specifically, this Court grants the motion to dismiss as to
Elliott and King; as to the joint-employer liability asserted against PrimeHealth
and Advantage; and as to the alter ego claim against Advantage.    This Court
otherwise denies the motion, and Plaintiffs' claims against PrimeHealth and
Advantage may proceed to the extent that they depend upon successor liability.
Finally, Jennifer Walton is dismissed as a plaintiff.

Dated:  February 12, 2018

Entered:

John Robert Blakey
United States District Judge