UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| ERIN PFEFFERKORN, *et al.*, | |
| Plaintiffs, | Case No. 17-cv-1223 |
| v. | |
| | Judge John Robert Blakey |
| PRIMESOURCE HEALTH GROUP, LLC, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Erin Pfefferkorn and others have sued Defendants PrimeSource Health Group, LLC, PrimeSource Health Care Systems, Inc., PrimeSource of Michigan, LLC, PrimeHealth Group, LLC, Advantage Capital Holdings, LLC, and three other individuals, alleging that Defendants have violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. [141]. Plaintiffs claim that Defendants failed to fully pay them minimum wage and for overtime hours. *Id*. Plaintiffs move to conditionally certify an FLSA collective action. [116]. They also request equitable tolling of the statute of limitations as of June 29, 2017 for all Plaintiffs who joined this case after that date and all opt-in plaintiffs who have not yet joined. *Id.* For the reasons explained below, this Court grants Plaintiffs' motion for conditional certification and their request for equitable tolling.

1

## I. Background

### A. The Complaint's Allegations

This Court presumes familiarity with, and incorporates by reference, its prior opinion partially granting and partially denying Defendants' motion to dismiss [101]. Therefore, this Court only briefly revisits the relevant facts to this case.[1]

Plaintiffs were employed by PrimeSource Health Group, PrimeSource Health Care Systems, and PrimeSource of Michigan (together, PrimeSource) as Clinical Assistants, Clinical Assistant Supervisors, Clinical Assistant Managers, and/or Patient Assistants. [141] ¶ 74. They worked for PrimeSource at times during the three years immediately preceding the commencement of this case. *Id.*

PrimeSource was a network of linked companies offering mobile medical services to long-term care facilities, *id.* ¶¶ 67–68, but closed its operations on or around December 31, 2016, *id.* ¶ 72. Plaintiffs allege that as part of their job duties, they would travel to different long-term care facilities throughout Illinois, Indiana, Michigan, and Kentucky. *Id.* ¶ 75. Their job responsibilities included: maintaining, inspecting, repairing, transporting, and cleaning medical equipment, and traveling to long-term care facilities to assist physicians and patients. *Id.* ¶ 78.

Plaintiffs allege that they worked greater than forty hours per week and were thus entitled to overtime payments of time and one-half for the hours they worked over forty each week. *Id.* ¶¶ 80–81. Plaintiffs claim that Defendants violated the FLSA by failing to compensate them at time and one-half rates for any hours they

---

[1] Plaintiffs filed a Third Amended Complaint following that order. [141].

worked over forty each work week. *Id.* ¶ 336. Plaintiffs also assert that Defendants violated the FLSA by failing to pay them the proper minimum wage. *Id.* ¶ 335.

## B.    The Proposed Classes

Plaintiffs seek to certify the following two collective classes, as follows:

1. **Clinical Assistants**: all persons who were employed by PrimeSource Health Care Group, LLC, PrimeSource Health Care Systems, Inc., and/or PrimeSource of Michigan, LLC as Clinical Assistants (to include, but not limited to "senior" Clinical Assistants, "Regional Managers" Clinical Assistant "managers," Clinical Assistant "supervisors," and other variants of "Clinical Assistants") in the states of Illinois, Indiana, Michigan, and Kentucky, at any time during the three years prior and up through the date the order granting conditional certification is entered, any date the Court equitably tolls the statute of limitations to, or the filing of the employee's consent to sue form, whichever date is earliest.

2. **Patient Assistants**: all persons who were employed by PrimeSource Health Care Group, LLC, PrimeSource Health Care Systems, Inc., and/or PrimeSource of Michigan, LLC as Patient Assistants in the states of Illinois, Indiana, Michigan, and Kentucky, at any time during the three years prior and up through the date the order granting conditional certification is entered, any date the Court equitably tolls the statute of limitations to, or the filing of the employee's consent to sue form, whichever date is earliest.

[118] at 13–14.

## II.    Legal Standard

FLSA suits cannot proceed as class actions; instead, they proceed as "opt-in representative actions," or collective actions. *Schaefer v. Walker Bros. Enters.*, 829 F.3d 551, 553 (7th Cir. 2016); *see also* 29 U.S.C. § 216(b). Through the conditional certification process, a district court determines whether potential plaintiffs "should be sent a notice of their eligibility to participate and given the opportunity to opt in

to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011).

Neither Congress nor the Seventh Circuit has specified exactly how courts should decide FLSA certification issues, but courts in this district generally use a two-step process. *See, e.g.*, *Nicks v. Koch Meat Co., Inc.*, 265 F. Supp. 3d 841, 848 (N.D. Ill. 2017) (internal quotation marks omitted); *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1132 (N.D. Ill. 2017).

First, a plaintiff must make a "modest factual showing" that she and "similarly situated employees" were "victims of a common policy" that violated the FLSA. *Grosscup v. KPW Mgmt.*, 261 F. Supp. 3d 867, 870 (N.D. Ill. 2017). Courts interpret "similarly situated" leniently, meaning plaintiffs need only clear a low bar to meet their burden at step one. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008). Nonetheless, "a modest factual showing cannot be founded solely upon allegations of the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other documents." *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011) (quoting *DeMarco v. Nw. Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510905, at *1 (N.D. Ill. Aug. 10, 2011)).

During this first stage, courts do not "make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence" from the defendant. *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013). If a plaintiff clears the "similarly situated" hurdle, a court conditionally

certifies the FLSA collective action and authorizes the plaintiff to send notice to potential plaintiffs, who may then opt in. *Grosscup*, 261 F. Supp. 3d at 870.

Second, after the opt-in process finishes and discovery closes, the district court must reevaluate its conditional certification to determine whether the named plaintiff and opt-in plaintiffs share enough similarities to allow the case to go to trial as a collective action. *Nicks*, 265 F. Supp. 3d at 849. The second step imposes more demanding requirements on plaintiffs, *id.*, but is not yet relevant at this stage of the proceedings.

### A. FLSA Standard

The FLSA entitles most employees to overtime pay at one-and-a-half times their regular rate for all hours worked beyond forty in a workweek. 29 U.S.C. § 207(a). Employees bear the burden of proving that they performed overtime work without getting proper compensation. *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 173 (7th Cir. 2011). To succeed on an overtime claim, an employee must show that her employer "had actual or constructive knowledge of her overtime work." *Id.* at 177. The FLSA requires an employer to "exercise its control and see that the work is not performed" if the employer does not want the work performed. 29 C.F.R. § 785.13. That duty applies even when the employee fails to officially report overtime hours. *Kellar*, 664 F.3d at 177 (quoting *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008)).

### III. Analysis

Here, Plaintiffs move for conditional certification and for this Court to approve its proposed notices. [118]. Plaintiffs also request equitable tolling of the statute of

limitations to June 29, 2017, for all plaintiffs who joined or will join after that date. *Id.* This Court addresses each request below.

### A.     Conditional Certification

In moving for conditional certification, Plaintiffs argue that all Clinical Assistants and Patient Assistants were compensated and misclassified in the same fashion by Defendants, and that all were denied overtime for any work they performed over forty hours a week. [118] at 13.

To establish that they and other potential opt-in plaintiffs are similarly situated and victims of a common policy, certain Plaintiffs submitted declarations that state the following:

- Plaintiffs were all Clinical Assistants or Patient Assistants for PrimeSource. [118-9] ¶ 2; [118-10] ¶ 2; [118-11] ¶ 2; [118-12] ¶ 3; [118-13] ¶ 2; [118-14] ¶ 2.

- Plaintiffs traveled to nursing facilities throughout their respective regions—Illinois, Indiana, Michigan, and Kentucky—to assist doctors, dentists, and optometrist in providing services to residents of nursing facilities. [118-9] ¶ 4; [118-10] ¶ 3; [118-11] ¶ 3; [118-12] ¶ 4; [118-13] ¶ 4; [118-14] ¶ 4.

- Plaintiffs were frequently required to "rideshare," or carpool, with other PrimeSource employees, when they traveled to the various nursing facilities. [118-9] ¶ 6; [118-10] ¶ 5; [118-11] ¶ 5; [118-12] ¶ 6; [118-13] ¶ 5; [118-14] ¶ 6.

- Plaintiffs spent most of their driving time engaged in mandatory, work related discussions, planning, and training. [118-9] ¶ 9; [118-10] ¶ 8; [118-11] ¶ 8; [118-12] ¶ 9; [118-13] ¶ 7; [118-14] ¶ 9.

- Plaintiffs worked greater than 40 hours a week nearly every week they were employed by PrimeSource, but they were paid flat salaries to work 40 hours a week at nursing facilities. [118-9] ¶ 15; [118-10] ¶ 14; [118-11] ¶ 12; [118-12] ¶ 15; [118-13] ¶ 8; [118-14] ¶ 15.

- Other than occasional weekend work that Plaintiffs were paid for, they were never compensated for: (1) hours worked in excess of 40 at nursing facilities; or

(2) hours worked outside of nursing facilities, including driving time. [118-9] ¶ 15; [118-10] ¶ 14; [118-11] ¶ 12; [118-12] ¶ 15; [118-13] ¶ 8; [118-14] ¶ 15.

• Clinical Assistants performed substantial amounts of work at home, such as inventorying equipment that PrimeSource delivered, unloading heavy medical equipment from their vehicles, and answering work-related calls, emails and text messages. [118-9] ¶ 12; [118-10] ¶ 11; [118-11] ¶ 10; [118-12] ¶ 12; [118-14] ¶ 12.

• Clinical Assistants personally observed that all other Clinical Assistants maintained the same working conditions; additionally, when they ride-shared with Patient Assistants, they observed that Patient Assistants spent most of their ride-sharing time participating in mandatory work-related discussions. [118-9] ¶ 14; [118-10] ¶ 13; [118-11] ¶ 11; [118-12] ¶ 14; [118-14] ¶ 14.

Thus, Plaintiffs have given sworn testimony that they (1) traveled for work; (2) performed work-related tasks while they drove from their homes to nursing facilities; and (3) were compensated for only a forty-hour work week even though they worked more than forty hours each week they were employed at PrimeSource. Five of the Plaintiffs also stated his or her personal observation that other Clinical Assistants and Patient Assistants spent most of their ride-sharing time participating in mandatory, work-related discussions.

Based upon these declarations, this Court finds that Plaintiffs have made the requisite "modest factual showing" that they and other "similarly situated employees" were "victims of a common policy" that violated the FLSA. *Grosscup*, 261 F. Supp. 3d at 870. Thus, Plaintiffs have passed the step-one test for conditional certification of their classes. *See, e.g.*, *Nicks*, 265 F. Supp. 3d at 853 (conditionally certifying FLSA class where plaintiffs submitted "multiple declarations from workers who worked at multiple locations in which they averred that they were regularly required to work more than 40 hours per week without being paid overtime.").

### B.    Defendants' Objections to Conditional Certification

Defendants filed a partial opposition, interposing various objections to Plaintiffs' proposed classes.  [135] at 1–4.  This Court addresses each in turn below and finds that none of them precludes conditional certification.

#### 1.    Brief Exceeding LR 7.1's Page Limitation

Defendants first argue that Plaintiffs' motion should be denied because their memorandum of law in support of their motion exceeded the 15-page limit set forth in Local Rule 7.1, and Plaintiffs did not obtain leave from this Court to exceed that limit.  [135] at 1.  This Court disagrees, because should Plaintiffs have requested leave to exceed the 15-page limit in Local Rule 7.1, this Court would have exercised its discretion and granted that request (and would have done the same as to any similar request by Defendants to do likewise).  This Court also reminds Plaintiffs to comply with all applicable Local Rules going forward.

#### 2.    Clinical Assistant Variations

Defendants next argue that Plaintiffs cannot meet their conditional certification burden for "Clinical Assistant Directors," "Clinical Assistant Regional Directors," or "Clinical Assistant Managers."  [135] at 2.

Specifically, as to "Clinical Assistant Directors" and "Clinical Assistant Regional Directors," Defendants contend that that no such positions existed at PrimeSource, relying upon the declaration of Bobbie Richey—the former Vice President of Human Resources for PrimeSource—who provided a sworn statement to that effect.  [135-2] ¶¶ 1, 2.  But Plaintiffs do not specifically reference these two

8

positions in either their proposed notice [118-28], or their motion [118]. Rather, Plaintiffs seek to certify a class of "Clinical Assistants" which they state includes, but is not limited to, "senior" Clinical Assistants, "Regional Managers," Clinical Assistant "managers," Clinical Assistant "supervisors," and other variants of "Clinical Assistants." [118] at 13–14. Thus, as written, the proposed conditional class does not even specifically contemplate "Clinical Assistant Directors" or "Clinical Assistant Regional Directors." This Court therefore finds it unnecessary to specifically carve out "Clinical Assistant Directors" and "Clinical Assistant Regional Directors" from Plaintiffs' class of "Clinical Assistants." If such positions never existed, then no class members holding those positions will opt in.

And, as to "Clinical Assistant Managers," Defendants argue that Plaintiffs offer no evidence that they were similarly situated to Plaintiffs. [135] at 2. Defendants' argument fails at this stage, because "Plaintiffs do not have to show that the potential class members have *identical* positions for conditional certification to be granted." *Jirak*, 566 F. Supp. 2d at 848–49. Rather, they can be "similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay." *Id.* at 849. Here, Plaintiffs point to the declaration of Lottie Farver, who was a "Clinical Assistant Supervisor" for PrimeSource. [139] at 2. Farver stated in her declaration that she was promoted to the position of "Clinical Assistant Supervisor" from "Clinical Assistant" in 2015, but her job duties did not change, other than gaining additional responsibilities, such as training and overseeing the work of other Clinical Assistants. [118-14] ¶ 16.

Thus, at this stage, Plaintiffs have made a sufficient showing that Clinical Assistants—and any variations of Clinical Assistants, such as "supervisors" or "managers"—are similarly situated. Should Defendants wish to present evidence of disparate factual and employment settings of individual class members," that argument is better reserved for the second stage of the certification process. *See Nicks*, 265 F. Supp. 3d at 855 (noting that "courts typically delay consideration of disparate factual and employment settings of individual class members until the second stage of the certification analysis.") (internal quotation and citation omitted); *Muir v. Guardian Heating & Cooling Servs., Inc.*, No. 16 C 9755, 2017 WL 959028, at *3 (N.D. Ill. Mar. 13, 2017) ("Concerns regarding a lack of common facts among potential class members and the need for individualized inquiries should be raised at step two, not step one.").

### 3. Patient Assistants in Illinois

Defendants next argue that Plaintiffs cannot conditionally certify Patient Assistants in Illinois because no such individuals existed. [135] at 3. While this might be true, this Court finds it unnecessary to specifically carve out Patient Assistants in Illinois from the conditional class. Simply put, if there were no Patient Assistants in Illinois, none will opt in.

### 4.    "Prior Notice" to Clinical Assistants

Next, Defendants contend that all Clinical Assistants should be aware of this action by now, and those who have not yet opted in "should have their wishes respected." [135] at 3.

Defendants' arguments here are unavailing, because they fail to show that all potential opt-in Clinical Assistants actually have notice of this action.  For instance, Defendants first argue that Clinical Assistants were given notice of potential claims as part of a 2017 Department of Labor (DOL) settlement because PrimeSource delivered back pay checks to potential class members pursuant to the settlement. *Id.*[2]  This Court, however, has already noted in its prior motion to dismiss opinion that PrimeSource's delivery of back pay checks do not mention any settlement with the DOL, nor that a collective action was already pending before this Court.  [101] at 9.  Accordingly, these back pay checks could not be reasonably construed as notice to any potential class members.

Defendants also argue that any potential opt-in Clinical Assistants should already be on notice because this Court in June 2017 ordered PrimeSource to turn over their contact information to Plaintiffs, and Plaintiffs have already provided notice to these individuals.  [135] at 3.  This argument fares no better, because this case had not yet been conditionally certified as of June 2017.  Thus, as of that date, Plaintiffs had not yet been provided an opportunity to issue *court*-authorized notices to the conditional classes.  Plaintiffs should be given the opportunity to follow through

---

[2] The DOL's investigation of, and subsequent settlement with, Defendants is discussed in more detail in this Court's prior motion to dismiss order.  [101].

with Clinical Assistants with the formal opt-in process contemplated by the FLSA; this will ensure that all potential plaintiffs with viable claims have notice.

### 5.     DOL Determination Regarding Patient Assistants

Defendants also contend that conditional certification should be denied for Patient Assistants because the DOL found that not a single Patient Assistant was owed back pay.  [135] at 4.

Defendants, however, cite no authority for why this Court need adopt the DOL's findings at this stage.  Nor do Defendants reconcile the DOL's findings with the declaration of Komeka Thomas, a former Patient Assistant, who stated that she was not paid for overtime work.  [118-13] ¶ 8.  This Court thus finds no basis to decline conditionally certifying Plaintiffs' proposed Patient Assistants class based upon the DOL determination.

### C.     Procedural Considerations Regarding the Opt-In Period

Because conditional certification is proper, this Court next addresses certain procedural considerations raised by the parties regarding the opt-in process.

First, as to the length of the opt-in period, Plaintiffs request 90 days, [139] at 12, while Defendants request 60 days, [135] at 4.  Plaintiffs urge that 90 days is appropriate because the potential class members are low-income workers who no longer work for PrimeSource, and thus may be difficult to contact.  [139] at 10. Defendants offer no substantive reason as to why they believe the opt-in period should be 60 days, rather than the 90 days that Plaintiffs propose.  [135] at 4.  Courts in this circuit have approved opt-in periods from 45 to 120 days.  *Nehmelman v. Penn*

*Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 764 (N.D. Ill. 2011) (collecting cases). Because (1) 90 days falls in the middle of this range; and (2) Defendants offer no substantive support for why a shorter period is appropriate in this case, this Court will authorize a 90-day opt-in period.

Second, Defendants argue that all parties should be barred from communicating with potential class members during this opt-in period. [135] at 4. Defendants offer no legal authority for this request, and Plaintiffs oppose it. [139] at 11. Thus, this Court rejects this second request.

Third, Defendants request that all counsel should be barred from communicating with class members during the opt-in period, except when responding to inquiries initiated by potential opt-ins; to that end, Defendants also request that this Court order counsel to keep lists of potential opt-ins with whom they have communicated about opting-in. [135] at 4–5. Plaintiffs do not oppose this request, except to argue that it is unnecessary to include a prohibition about solicitation in this Court's order, because soliciting is already prohibited by the Rules of Professional Conduct. [139] at 11. This Court grants Defendants' unopposed request. All counsel should refrain from communicating with class members during the opt-in period, except when responding to inquiries initiated by potential opt-in members. Additionally, all counsel should keep a list of potential opt-ins with whom they communicate regarding opting in.

Finally, Defendants contend that they should not be required to provide their former employees' phone numbers or email addresses to facilitate the opt-in process

13

unless and until regular mail notice is returned as undeliverable. [135] at 5. In response, Plaintiffs do not address whether they require phone numbers, but do argue that Defendants should provide them with email addresses. [139] at 11. This Court finds that Plaintiffs' request for email addresses is reasonable, because "dual postal mail and e-mail distribution is likely to advance[ ] the remedial purpose of the FLSA by increasing the likelihood that all potential opt-in plaintiffs will receive notice." *Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016) (internal quotation and citation omitted); *Grosscup*, 261 F. Supp. 3d at 880 (holding that "notice by email is appropriate and enhances the chance that the potential opt-in plaintiffs receive the notice."). Therefore, Defendants must provide Plaintiffs with both the email addresses and postal mail addresses of potential opt-in class members, and Plaintiffs are permitted to send their notices through both methods of communication.[3]

### D.      Plaintiffs' Proposed Notices

This Court next addresses whether Plaintiffs' proposed forms of notice are adequate and appropriate.

Here, Plaintiffs have proposed separate notices for Clinical Assistants and Patient Assistants. *See* [118-28] [118-29]. Ordinarily, absent "reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Kelly v. Bank of Am., N.A.,* 10 C 5332, 2011

---

[3] This Court also grants Plaintiffs' unopposed request that they be allowed to send two reminder notices to potential opt-in plaintiffs. [118] at 15.

WL 7718421, at *1 (N.D. Ill. Sept. 23, 2011) (quoting *King v. ITT Continental Baking Co.,* No. 84 C 3410, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986)).

Defendants have three proposed revisions to Plaintiffs' notices. They first ask that the notices identify only the following employers: PrimeSource Health Group, LLC, PrimeSource Health Care Systems, Inc., and PrimeSource of Michigan, LLC. [135] at 5. Plaintiffs' proposed notices, meanwhile, identify all Defendants in this action, [118-28] [118-29], and Plaintiffs insist that they remain identified so that potential opt-ins may be made aware that other Defendants cannot retaliate against them, [139] at 12. This Court finds it reasonable that all remaining Defendants be identified in the notices and thus overrules Defendants' objection on this point.

Defendants also object to a 90-day opt-in period and to the inclusion of Patient Assistants in Illinois. [139] at 12. This Court also overrules these objections, for the reasons stated above.

Lastly, Defendants request that the notices be updated to reflect current defense and local counsel for the parties. [135] at 6. Plaintiffs do not object to this request. [139] at 12. This Court finds this request reasonable and appropriate. Therefore, Plaintiffs should make appropriate edits to the notices to reflect current counsel.

This Court now turns to its own objections to Plaintiffs' proposed notices. The Seventh Circuit has cautioned that district courts should not create the appearance of "apparent judicial sponsorship of the notice, at a stage in the litigation when there has been no determination that the plaintiff's allegations have any merit." *Woods v.*

15

*New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982). Here, both proposed notices contain the heading: "Authorized by Judge Robert Blakey of the United States District Court for the Northern District of Illinois." [118-28] [118-29]. Plaintiffs must remove this heading from the notices, or alternatively, include the entire caption of the case, so that it is clear that the notice is a routine court document, not a letter from this Court. *See, e.g.*, *Jirak*, 566 F. Supp. 2d at 851 (requiring the plaintiff to remove a similar heading, or alternatively, include the entire case caption).[4] Plaintiffs should also include conspicuous language in the notices instructing potential class members not to contact this Court with any questions about this case. *See id.* Such edits to these notices will eliminate any appearance of judicial sponsorship.

### E. Equitable Tolling

Finally, this Court addresses Plaintiffs' request that this Court equitably toll the running of the statute of limitations in this case. [116] at 2; [118] at 21–24.

FLSA requires that an action "be commenced within two years after the cause of action accrued," unless the violation was willful, in which case the statute of limitations is three years. 29 U.S.C. § 255(a). The FLSA statute of limitations runs until each opt-in class member files a written consent to join the action. 29 U.S.C. § 256. Thus, the statute of limitations for potential class members will continue to run until those members opt in. *Id.*

---

[4] Plaintiffs should also correct any references to "The Honorable Robert Blakey" to "The Honorable John Robert Blakey."

16

Here, Plaintiffs request that the statute of limitations be equitably tolled as of June 29, 2017 "for all Plaintiffs who joined this matter after that date and for all [opt-in] plaintiffs who have yet to join." [116] at 2. Defendants do not disagree that some degree of equitable tolling is proper in this case. [135] at 5. They argue, however, that "there is no basis for tolling from February 12, 2018," because "Plaintiffs could have moved for conditional certification any time after" that date. [135] at 5.

To give context to Plaintiffs' request—and Defendants' limited opposition—this Court briefly revisits the procedural history in this case. On June 29, 2017, Plaintiffs initially moved for conditional certification. [51]. A few weeks later, this Court denied without prejudice that initial motion as premature and instructed Plaintiffs that it would not rule on any conditional certification request until the final pleadings were on file. [58]. The parties then engaged in briefing on Defendants' motions to dismiss, and this Court ruled on those motions on February 12, 2018. [101]. In May 2018, three months after this Court ruled, Plaintiffs filed the "final" complaint—the Third Amended Complaint, [141]; in the same month, they renewed their motion for conditional class certification, [116].

Given the procedural history of this case and the fact that the statute of limitations continues to run for opt-in plaintiffs, this Court agrees with Plaintiffs that the statute of limitations should be tolled as of the date Plaintiffs filed their initial motion for conditional certification, on June 29, 2017. Moreover, given Plaintiffs' efforts to certify since June 29, 2017, this Court declines to limit the scope of equitable tolling and therein rejects Defendants' argument that tolling should be suspended as

17

of February 12, 2018. Thus, this Court grants Plaintiffs' request that the statute of limitations be equitably tolled as of June 29, 2017 for all Plaintiffs who joined this matter after that date and for all opt-in plaintiffs who have yet to join.[5]

## IV.    Conclusion

This Court grants Plaintiffs' motion for conditional certification. [116]. Accordingly, this case is conditionally certified as a collective action pursuant to Section 16(b) of the FLSA. This Court also grants Plaintiffs' request to equitably toll the statute of limitations as of June 29, 2017 for all Plaintiffs who joined this matter after that date and for all opt-in plaintiffs who have yet to join.

Before the parties issue notice, Defendants shall produce to Plaintiffs two lists (in Microsoft Excel format) of all persons employed by PrimeSource (1) as Clinical Assistants, and (2) as Patient Assistants, from June 29, 2014 through present. The lists should contain each person's name, address, email address, and dates of employment. The lists should be produced to Plaintiffs within 7 days of this order.

The parties are directed to meet and confer regarding revised notices that accord with this Court's rulings. The parties should file the revised notices within 7 days of this order. This Court expects to approve the issuance of the revised notices at the next status hearing.

The parties are also directed to meet and confer about case management dates. The parties should file a joint status report with a proposed case schedule—to include

---

[5] Defendants also argue that there should be no tolling for Clinical Assistants because they have already been provided notice of this action. [135] at 5. This Court rejects this argument for the reasons stated above.

deadlines for the close of discovery, dispositive motions, and motions for decertification of the collective action—within 7 days of this order. The parties should be prepared to set final case management dates at the next status hearing.

Dated: January 29, 2019

Entered:

John Robert Blakey
United States District Judge